UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICK A. LINGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:06-CV-1392 CAS |
| | ) |
| STEVE M. BURLE, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff Patrick Lingo's motion for partial summary judgment and defendant Fred Stith's cross-motions for partial summary judgment.[1] The remaining defendants have not filed motions for summary judgment. Because the Court finds an issue of material fact exists that prevents the Court from determining whether the defendant officers had probable cause to seize and arrest plaintiff, the Court will deny plaintiff's motion. The Court will grant defendant Stith's first motion for partial summary judgment only to the extent plaintiff seeks liability against defendant Stith under § 1983 for denial of his right to speak to an attorney. Defendant Stith's motions will be denied in all other respects.

**I. Background**

On July 23, 2005, defendants allegedly unlawfully detained and battered plaintiff Patrick Lingo in a holding cell at the former Busch Stadium after he refused to reveal the supplier of various t-shirts in his possession. In his amended complaint, plaintiff alleges the following federal and state law claims against defendants: denial of civil rights in violation of 42 U.S.C. § 1983 (Count I); failure and

___
[1]With leave of Court, defendant Stith filed two motions for partial summary judgment. [Docs. 77 and 95]

refusal to render aid and denial of civil rights (Count II); battery (Count III); intentional infliction of emotional distress (Count IV); violation of Missouri Statute § 544.193 (Count V); and false imprisonment (Count VI).

Plaintiff has filed a motion for partial summary judgment, seeking a partial judgment of liability on the following grounds: (1) defendants Welby, Burle, Lawson, and SLC Holdings, LLC are liable under 42 U.S.C. § 1983 for improper seizure of plaintiff in violation of the Fourth and Fourteenth Amendments; (2) defendants Welby, Burle, Lawson, Stith, and SLC Holdings, LLC are liable under 42 U.S.C. § 1983 for false arrest and unlawful restraint of plaintiff; and (3) defendants Welby, Burle, Lawson, Stith, Walsh, and SLC Holdings, LLC are liable to plaintiff for false imprisonment. Defendant Stith has filed a separate motion for partial summary judgment against plaintiff, asserting that he is protected as a government official by the doctrine of official immunity and the public duty doctrine. Defendant Stith also seeks partial summary judgment on the merits of plaintiff's false imprisonment claim, his claim based on the denial of a right to speak to an attorney, and his claim that officer Stith slapped, hit, or strangled him. In his second motion, defendant Stith seeks partial summary judgment on plaintiff's claim of false arrest, and asserts the doctrine of qualified immunity.

**II. Legal Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. <u>City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.</u>, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); <u>Herring v. Canada Life Assur. Co.</u>, 207 F.3d 1026, 1029 (8th Cir. 2000); <u>Allen v. Entergy Corp.</u>, 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Herring</u>, 207 F.3d at 1029 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. <u>See Crossley v. Georgia-Pacific Corp.</u>, 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." <u>Armour and Co., Inc. v. Inver Grove Heights</u>, 2 F.3d 276, 279 (8th Cir. 1993).

Where the parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and

whether the movant is entitled to judgment as a matter of law. See, e.g., Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir.1983) ("[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary decision on the merits."); see generally, 11 James Wm. Moore, et al., Moore's Federal Practice § 56.10[6] (3d ed. 2007). Thus, a cross-motion for summary judgment is treated in the same manner as a single summary judgment motion.

With this standard in mind, the Court accepts the following facts as true for purposes of resolving the parties' motions for summary judgment.

### III. Facts

On July 23, 2005, before an afternoon game between the St. Louis Cardinals and the Chicago Cubs, defendant police officers Steve Burle and James Welby (working secondary employment for the St. Louis Cardinals) observed plaintiff near the old Busch Stadium carrying a backpack and holding a t-shirt. Plaintiff was approached by the officers who were riding in a golf cart, and questioned as to whether he had a vendor's license. Plaintiff stated that he did not. Plaintiff was asked where he obtained the t-shirts, and he refused to answer, stating "I don't want to get anybody else in trouble."

At this point, plaintiff was handcuffed behind his back, placed on the golf cart with the officers, and transported to a holding cell inside the old Busch Stadium. Both officers testified that plaintiff was not under arrest at this point, but that he was not free to go. Plaintiff alleges that he was verbally harassed, struck, strangled, and strip searched in the holding cell. Defendant Frederick Stith wrote an incident report charging plaintiff with "Violation of Vendor Ordinance." The Information Disposition Report and the Prisoner Processing Report charge plaintiff with "No Vending License."

## IV. Discussion

### I.
### Plaintiff's Motion for Partial Summary Judgment

#### A. Unlawful Seizure and False Arrest

In his first argument for partial summary judgment, plaintiff seeks a judgment that defendants Welby, Burle, Lawson, and SLC Holdings, LLC are liable under 42 U.S.C. § 1983 because they did not have probable cause to seize plaintiff when they approached him outside of Busch Stadium. In his second argument, plaintiff seeks partial summary judgment that these defendants and defendant Stith are liable for false arrest under § 1983 because he was arrested without probable cause. Defendants argue that disputed facts preclude a determination as to probable cause. Because arrests are "seizures" within the meaning of the Fourth Amendment, see United States v. Clark, 743 F.2d 1255, 1258 (8th Cir. 1984), and both require probable cause, the Court will address plaintiff's first two arguments together.

##### *1. The Seizure*

A § 1983 unlawful seizure or false arrest claim relies on a substantive Fourth Amendment right to be free from unreasonable searches and seizures. Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986) (a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments). To establish a violation of the Fourth Amendment in a § 1983 action, the plaintiff must demonstrate a seizure occurred and the seizure was unreasonable. See Hawkins v. City of Farmington, 189 F.3d 695, 702 (8th Cir. 1999). A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority. See Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).

To determine whether defendants violated plaintiff's Fourth Amendment rights to be free of unreasonable seizure, the Court must first determine when plaintiff was seized within the meaning of the Fourth Amendment. A police encounter constitutes a seizure "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." United States v. Clark, 743 F.2d 1255, 1258 (8th Cir. 1984) (quoting I.N.S. v. Delgado, 466 U.S. 210 (1984)). Merely questioning an individual who remains free to disregard the questions and walk away does not constitute a Fourth Amendment seizure. "Examples of circumstances that might indicate a seizure . . . would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id. (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). Arrests are "seizures" within the meaning of the Fourth Amendment. See id. Courts have held that a de facto arrest can occur when a suspect is transported to another location or isolated from others. See United States v. Bloomfield, 40 F.3d 910, 917 (8th Cir. 1994). Additional factors indicating a de facto arrest are handcuffing a suspect or confining him to a police car. See id.

The Court finds that plaintiff was seized within the meaning of the Fourth Amendment when the officers handcuffed him, placed him on the golf cart, and transported him to the holding cell in Busch Stadium. According to both officers, when plaintiff was approached initially, Officer Welby merely asked if he had a vendor's license. At this point, plaintiff might have reasonably felt free to leave or disregard the officer's questions. Once the officer asked where plaintiff had gotten the t-shirts and plaintiff refused to answer, however, the interview took a turn. Officer Burle immediately restrained plaintiff with handcuffs, placed him on the golf cart, and the officers transported plaintiff

from his location on or near 8th Street to a holding cell inside Busch Stadium for further questioning. Significantly, both officers testified that at the point plaintiff was handcuffed, he was not free to leave. At no time did the officers tell plaintiff he was not under arrest or not obligated to answer their questions. Plaintiff remained handcuffed throughout the questioning at Busch Stadium, and according to plaintiff, the tone of the interview became increasingly intimidating. The officers' actions of restraining plaintiff and transporting him to a holding cell after he refused to answer a question would indicate to a reasonable person that plaintiff was not free to disregard the officers' questioning and was not free to leave. See Bloomfield, 40 F.3d at 917; United States v. Clark, 743 F.2d at 1259.

2. *Probable Cause*

For plaintiff to succeed on his motion for partial summary judgment on liability under § 1983, he must prove that the officers' actions were taken without probable cause. If the officers had probable cause to arrest plaintiff, then his seizure and arrest were not unreasonable.[2] See United States v. Sturgis, 238 F.3d 956, 959 (8th Cir. 2001) (finding seizure not illegal because agents had probable cause to arrest). The proper standard for determining whether probable cause existed is whether the arresting officer reasonably believed an individual has committed or is committing a crime. Id. at 412. More specifically:

---

[2]Defendants distinguish the determination of probable cause from the determination of reasonableness. They argue that plaintiff must prove the seizure was both unreasonable and without probable cause, and cite for support Brower v. County of Inyo, 489 U.S. 593, 599 (1989). In the Brower case, however, the plaintiff was not claiming an unlawful seizure based on the absence of probable cause. Id. ("[Plaintiff Brower's claim] should be contrasted with the situation that would obtain if the sole claim of unreasonableness were that there was no probable cause for the stop."). Unlike Brower, here plaintiff is claiming the seizure is unreasonable because the officers had no probable cause.

7

> [i]n determining whether probable cause exists to make a warrantless arrest, a court will consider whether the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed ... an offense. Probable cause is to be assessed in terms of the circumstances confronting a reasonably cautious police officer at the time of the arrest, and the arresting officer is entitled to consider the circumstances, including arguably innocent conduct, in light of his training and experience. "[T]he probability, and not a prima facie showing, of criminal activity is the standard of probable cause."

Hannah, 795 F.2d at 1389 (quoting United States v. Wallraff, 705 F.2d 980, 990 (8th Cir. 1983)).

Plaintiff was charged with a violation of the vendor ordinance, "No Vendors License."[3] St. Louis City Ordinance No. 65061 states that no person shall operate a business as a sidewalk vendor within a vending district without having obtained a vendors license. The "Downtown Vending District" is defined as follows:

> [T]he area bounded by the Mississippi River on the east, Cole Street on the north, Tucker Boulevard on the west and Interstate highway 40 on the south.

St. Louis City Ordinance No. 65061.

In his motion for partial summary judgment, plaintiff argues that defendants did not have probable cause to arrest him, because at the time the officers approached him, he was located south of Highway 40, which is outside the downtown vending district. If he was not located within a vending district, plaintiff contends, he did not need a vending license, and as a matter of law the officers could not have probable cause to arrest him. Defendant Stith argues in his opposition brief,

---

[3]Defendants argue that the nature of the charges against plaintiff is a disputed fact, pointing to the notation in the incident report that states the offense was "sidewalk sales." Defendants' argument is not persuasive. The prisoner processing report lists the charge as "01-81015990 SUS-NO VENDORS LICENSE," and the "Information Disposition Report" states twice that Mr. Lingo was arrested and charged with "NO VENDING LICENSE." Additionally, the narrative portion of the incident report clearly establishes that plaintiff was arrested for not having a City of St. Louis Vending License, the same violation for which he had been issued a City Court Summons on July 22, 2005. Finally, the Information filed against plaintiff states that he operated a business as a sidewalk vendor without having obtained a license. See Pl. Exs. 7, 9-11, 13. Based on the record, the Court finds that plaintiff was charged with operating a business as a vendor without a vendor's license.

8

however, that the arrest of plaintiff was constitutionally valid even if the officers did not have probable cause to arrest him for not having a vending license. Defendant Stith cites the Supreme Court's ruling in Devenpeck v. Alford, 543 U.S. 146, 153-55 (2004), for the proposition that if the officers had probable cause to arrest plaintiff for another offense, even if that offense was not "closely related" to the offense for which he was arrested, the arrest was constitutionally valid. Defendant Stith argues the officers either had probable cause to arrest plaintiff for not having a vending license or they had probable cause to arrest plaintiff under St. Louis City Ordinance No. 8.108A.020, which states:

> No person shall sell or offer for sale . . . any goods . . . upon any public sidewalk, street, roadway, or roadway median within the City of St. Louis except in those areas designated by ordinance as Vending Districts.

In Devenpeck, defendant police officers arrested a suspect for violation of the state's privacy act because he had tape recorded a conversation with the officers during a traffic stop. See Devenpeck, 543 U.S. at 148-49. At the time of the arrest, a state court of appeals decision had clearly established that the suspect's tape recording of the officers was not a crime. See id. at 151. Based on the appellate court decision, plaintiff filed a § 1983 action alleging false arrest and imprisonment in violation of his Fourth Amendment rights. However, the officers most likely had probable cause to arrest the suspect for impersonating a police officer or obstructing a law enforcement officer. See id. at 148-49.

The Ninth Circuit held in favor of plaintiff, concluding that the officers could not have had probable cause to arrest because they cited only the privacy act charge and "[t]ape recording officers conducting a traffic stop is not a crime in Washington." Id. at 152. The Ninth Circuit rejected the officers' claim that probable cause existed to arrest the plaintiff for the offenses of impersonating a

9

law enforcement officer and obstructing a law enforcement officer, because these offenses were not "closely related" to the offense invoked by the officers when they took the plaintiff into custody.

The Supreme Court reversed the Ninth Circuit's decision, finding no basis to confine the probable cause inquiry "to the known facts bearing upon the offense actually invoked at the time of the arrest." Id. at 152. "The rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of the arrest is inconsistent with [Supreme Court] precedent." Id. at 153. The Supreme Court remanded the case to the Ninth Circuit to decide if the officers had probable cause to arrest plaintiff for obstruction of an officer or impersonating an officer.

Based on the Supreme Court's holding in Devenpeck, if the facts and circumstances within Officers Burle and Welby's knowledge were sufficient to warrant a prudent person in believing plaintiff had committed or was committing an offense, even if that offense was not the offense actually invoked at the time of the arrest, they had probable cause to arrest him. Even assuming the officers arrested plaintiff south of Highway 40 (i.e., outside a vending district) without a vendor's license, that fact alone does not negate the probable cause determination. Based on the undisputed facts, Officers Burle and Welby approached plaintiff on public property and he did not have a vendor's license. See Pl. SOF 11; Def. Stith SOF 3. If the officers reasonably believed plaintiff was selling t-shirts, they had probable cause to arrest him either for vending inside a vending district without a vendor's license, or they had probable cause to arrest him for vending outside a vending district. It is immaterial to the probable cause determination whether plaintiff was located north or south of Highway 40.[4]

---

[4]Plaintiff's motion makes much of the fact that Officers Burle and Welby stated that they did not arrest plaintiff, but detained and transported plaintiff to Busch Stadium for further investigation.

The issue that precludes a determination of probable cause on summary judgment is whether the officers reasonably believed plaintiff was engaged in selling t-shirts. The parties dispute what plaintiff was doing when defendants approached him. Plaintiff testified that he was walking, carrying a backpack, and holding a t-shirt down by his side. (Pl. dep. 43-44, 47-48, 53). Plaintiff testified that he was not saying anything to the public about selling t-shirts as he was walking. (Id.). Officer Burle testified that plaintiff was "actually wearing one of the t-shirts that he was attempting to sell, had another t-shirt in his hand, he was holding it by both shoulders displaying the t-shirt, turning it from front to rear, allowing people to read what was on the shirt, and he was engaged in conversation with people regarding the sale of these t-shirts." (Burle dep. at 26). Officer Welby testified that he and Officer Burle walked up to plaintiff, and asked him what he was doing. "He said he was selling the shirts, trying to make a few bucks . . . ." (Welby dep. at 34). Reggie Lawson, the driver of the golf cart, testified that plaintiff was holding up the t-shirts, but could not recall if he was talking to passers-by. (Lawson dep. at 17).

In determining whether summary judgment is appropriate, the Court must view the facts and inferences in the light most favorable to the defendants, the non-moving party. The Court has reviewed the record extensively and, based on the record before it, finds there is a dispute as to what activities plaintiff was engaged in when he was approached by the officers, and what (if anything) he said. Based on these disputed facts, the Court cannot determine as a matter of law whether the officers had probable cause to arrest plaintiff. This finding precludes entry of partial summary

---

Both officers testified that defendant Stith conducted an investigation and arrested plaintiff. Defendant Stith testified, however, that he did not conduct any investigation and did not arrest plaintiff. Based on these inconsistencies in the officers' testimony, plaintiff argues that probable cause could not exist as a matter of law because there was no investigation and no arresting officer. Plaintiff's argument is overly technical, and does not address the facts and circumstances within the officers' knowledge at the time of the arrest.

11

judgment in favor of plaintiff as to defendants' liability under 42 U.S.C. § 1983 for the alleged unlawful seizure and false arrest. See Nix v. Sweeney, 573 F.2d 998, 1001 (8th Cir. 1978) (finding jury question existed regarding conflicting evidence of probable cause on summary judgment in false arrest case).

### B. False Imprisonment

The elements required to prove false arrest and false imprisonment are identical. Both occur when there is confinement without legal justification by the wrongdoer of the person involved. Hannah, 795 F.2d 1385; see also Desai v. SSM Health Care, 865 S.W.2d 833, 836 (Mo. Ct. App. 1993). The constituent elements of false imprisonment are: (1) detention or restraint of the plaintiff against his will; and (2) the unlawfulness of the detention or restraint; i.e., that the plaintiff was detained or restrained without probable cause. Id. A police officer "who arrests someone with probable cause is not liable for false arrest [or false imprisonment] simply because the innocence of the suspect is later proved." Hannah, 795 F.2d at 1389 (quoting Pierson v. Ray, 386 U.S. 547, 555 (1967)). In light of the above discussion on the dispute regarding plaintiff's activities at the time of his arrest, the Court finds a disputed issue of material fact exists and precludes granting plaintiff partial summary judgment as to defendants' liability on plaintiff's false imprisonment claim.

## II.
## Defendant Stith's Motions for Partial Summary Judgment

Defendant Fred Stith filed two motions for partial summary judgment. In his first motion, he seeks partial summary judgment against plaintiff on the grounds that both official immunity and the public duty doctrine protect him from liability and suit on plaintiff's state law claims. He also seeks summary judgment on plaintiff's claims alleging false imprisonment, denial of the right to speak to

an attorney, and any liability arising out of plaintiff allegedly being slapped, hit, or strangled. In his second motion for partial summary judgment, defendant Stith seeks summary judgment on plaintiff's claims of false arrest, and also argues that he is protected by the doctrine of qualified immunity.

### A. **Official Immunity**

In his motion for partial summary judgment, defendant Stith argues he is shielded from liability on plaintiff's state law claims by the doctrine of official immunity. Under the Missouri doctrine of official immunity, public employees are protected from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts. Southers v. City of Farmington, --- S.W.3d ---, 2008 WL 2346191, *3 (Mo. June 10, 2008) (en banc) (discussing at length the doctrines of sovereign immunity, official immunity, and the public duty doctrine); Kanagawa v. State ex rel. Freeman, 685 S.W.2d 831, 835 (Mo. 1985) (en banc). Whether an act can be characterized as discretionary depends upon the degree of reason and judgment required to carry it out. The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity. See Southers, 2008 WL 2346191 at *4.

Missouri courts have determined a number of things that require a police officer's professional expertise and judgment, including:

> deciding whether to arrest or detain a person for driving while intoxicated, deciding how best to apprehend a gunman when surrounding the gunman's apartment, deciding whether to set up barricades or warning devices when investigating an accident, disciplining prisoners, executing a search warrant, deciding when to pursue and end pursuit of a fleeing vehicle, and pursuing another vehicle.

13

King v. Vessell, 2008 WL 2559424, *5 (E.D. Mo. June 23, 2008) (quoting Brown v. Tate, 888 S.W.2d 413, 415 (Mo. App. 1994)).

The party moving for summary judgment has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. The Court finds that defendant Stith has not met this burden. The record calls into question what acts defendant Stith performed, and therefore the Court cannot determine whether he exercised professional judgment such that he would be protected by the doctrine of official immunity. Defendants Burle and Welby both testified that defendant Stith conducted an investigation and arrested plaintiff. (Burle dep. at 45; Welby dep. at 54). Defendant Stith's name appears on the incident report as the "arresting officer" and the "primary investigating officer." See Pl. Exs. 7, 9-10. Defendant Stith signed the incident report as officer issuing the summons and the reporting officer. See Pl. Ex. 7. Defendant Stith denies that he conducted any investigation or arrested plaintiff, however, and states that he only prepared a police report relying on information given to him by other officers. (Stith dep. at 23, 34). Defendant Stith states that he did not conduct any investigation of plaintiff other than to gather basic pedigree information for the police report.

The doctrine of official immunity also protects public employees from liability for alleged acts of negligence. Southers, 2008 WL 2346191 at *3. With respect to each state law claim, plaintiff alleges defendants' actions were "intentional, willful, wanton, and done with evil motive and with actual intention to cause harm to plaintiff." Further, he testified at deposition that while he was detained in the holding cell, defendant Stith exposed plaintiff's genitals and harassed him. (Pl. dep. at 68-69, 72). The Court cannot find as a matter of law that the doctrine of official immunity would protect defendant Stith from state law claims arising out of these alleged activities.

### B. Public Duty Doctrine

Defendant Stith also seeks partial summary judgment on plaintiff's state law claims under the public duty doctrine. The public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, as distinguished from a duty owed to a particular individual. Southers, 2008 WL 2346191 at **4-5. "The kind of duty owed to the public at large, rather than the individual injured, is the kind that requires the public official to use his professional expertise, training, and judgment: it is not sufficient that the public official be acting within the scope of his employment." Id. (quoting Davis-Bey v. Missouri Dept. of Corr., 944 S.W.2d 294, 298 (Mo. Ct. App. 1997)). The public duty doctrine will not apply where the defendant public employee acts "in bad faith or with malice." Id. (quoting Jackson v. City of Wentzville, 844 S.W.2d 585, 588 (Mo. Ct. App. 1993)).

Again, a material factual dispute exists regarding the duties performed by defendant Stith. Because the record is disputed as to whether defendant Stith conducted an investigation of plaintiff, and because plaintiff has alleged and offered some evidence as to defendant Stith's bad faith and malicious conduct, the Court cannot find as a matter of law that the doctrine of official immunity would protect defendant Stith from state law claims.

### C. Qualified Immunity

In his second motion for partial summary judgment, defendant Stith argues he is entitled to qualified immunity on plaintiff's § 1983 claim of false arrest. Defendant Stith argues that he cannot be liable for false arrest because other than basic pedigree information, all the information contained in his police report was provided to him by Officers Burle and Welby. Defendant Stith states that according to well-settled law, an officer may rely upon information provided by others in the law

15

enforcement community. Based on what the other officers told him, defendant Stith argues that he had probable cause to arrest plaintiff at the time he wrote the police report and signed the summons (although he disputes that he arrested plaintiff).

The qualified immunity analysis is performed in two steps. First, viewing the facts in the light most favorable to plaintiff, the Court asks whether the official's conduct violated a constitutional right. Ambrose v. Young, 474 F.3d 1070, 1077 (8th Cir. 2007). If the answer is no, "there is no necessity for further inquiries concerning qualified immunity." Id. (quoting Vaughn v. Greene County, Ark., 438 F.3d 845, 850 (8th Cir. 2006)). If the answer is yes, the Court must determine "whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." Id.

As previously discussed, a material factual dispute exists regarding whether defendants Burle and Welby's conduct violated plaintiff's Fourth Amendment right to be free from unreasonable seizure. There is also a factual dispute concerning defendant Stith's participation in the investigation and arrest of plaintiff. For purposes of the qualified immunity analysis, defendant Stith has the burden to establish the relevant facts at the summary judgment stage, and the plaintiff is given the benefit of all reasonable inferences. When the facts are viewed in the light most favorable to plaintiff, the facts alleged show defendants, including defendant Stith, violated plaintiff's Fourth Amendment right to be free from unlawful seizure and arrest. This right was clearly established at the time of the arrest, such that defendants were clearly put on notice that their actions in seizing and arresting plaintiff without probable cause would be unreasonable. See Goff v. Bise, 173 F.3d 1068, 1072 (8th Cir. 1999); Habinger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.), cert. denied, 519 U.S. 1011 (1996).

Accordingly, defendant Stith's motion for partial summary judgment on the false arrest claim based on qualified immunity should be denied.

### D. False Arrest and False Imprisonment Claims

Defendant Stith seeks partial summary judgment against plaintiff on the merits of plaintiff's claim of false arrest and false imprisonment. As discussed above, a dispute of material fact exists that precludes the Court from determining whether the officers had probable cause to arrest plaintiff. Because the Court cannot make a probable cause determination, it cannot enter a judgment as a matter of law on defendant Stith's motion for partial summary judgment on the merits of plaintiff's claims of false arrest or false imprisonment.

### E. Denial of Right to Speak to an Attorney

Defendant Stith seeks partial summary judgment to the extent plaintiff's § 1983 claim is based on the alleged denial of plaintiff's right to speak to an attorney. Stith cites ample case law establishing that a litigant cannot maintain an action under § 1983 based on a violation of the Miranda safeguards. See Def. Stith Mem. at 7 (citing Hannon v. Sanner, 441 F.3d 635, 636 (8th Cir. 2006)). Plaintiff does not dispute that a violation of his right to speak to an attorney, standing alone, does not provide a basis for liability under § 1983. See Pl. Opp'n at 10. Therefore, the Court will grant defendant Stith partial summary judgment to the extent plaintiff seeks to assert § 1983 liability based on allegations of a denial of his right to speak to an attorney.

### F. Partial Summary Judgment on Claims of Slapping, Hitting, or Strangling

Defendant Stith seeks partial summary judgment that he is not liable to the extent plaintiff asserts claims that Stith slapped, hit or strangled him. In support of his argument, defendant Stith

points to plaintiff's deposition testimony implicating other officers in this activity. Defendant Stith is correct that plaintiff admits that Stith did not slap, hit, strangle him. See Pl. Resp. to Def. SOF ¶¶ 10-11. Plaintiff testified, however, that defendant Stith harassed him and pulled his shorts down to expose his genitals. See Pl. Dep. at 69. To the extent defendant is seeking summary judgment on plaintiff's claims of unreasonable force under 42 U.S.C. § 1983, the motion will be denied because the record establishes a dispute as to whether defendant Stith used unreasonable force against plaintiff. To the extent defendant Stith seeks to exclude testimony regarding any slapping, hitting, or strangling on his part, he might consider filing a motion in limine to exclude this evidence before trial.

## V. Conclusion

For the foregoing reasons, the Court will deny plaintiff's motion for partial summary judgment. The Court will grant in part and deny in part defendant Stith's first motion for partial summary judgment, and will deny defendant Stith's second motion for partial summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for partial summary judgment is **DENIED**. [Doc. 73]

**IT IS FURTHER ORDERED** that defendant Fred Stith's first motion for partial summary judgment is **GRANTED** in part and **DENIED** in part; said motion is granted to the extent that plaintiff seeks to assert liability pursuant to 42 U.S.C. § 1983 arising out of a denial of his right to speak to an attorney, and denied in all other respects. [Doc. 77]

**IT IS FURTHER ORDERED** that defendant Fred Stith's second motion for partial summary judgment is **DENIED**. [Doc. 95]

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 15th day of July, 2008.